```
                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF TEXAS
                         CORPUS CHRISTI DIVISION
```

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | Criminal Action |
| v. | § § | No. C-06-549 |
| GUADALUPE RODRIGUEZ | § |  |

### ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

On this day came on to be considered Defendant Guadalupe Rodriguez' motion to suppress (D.E. 34). For the reasons set forth below, Defendant's motion to suppress is hereby DENIED.

### I.   Background

On July 13, 2006, at approximately 10:00 PM, Defendant Guadalupe Rodriguez ("Defendant") drove a tractor-trailer into the Sarita Border Patrol Checkpoint. (Mot. to Supp. ("MTS") at 1; Gov.'s Resp. ("GR") at 1.) After a Border Patrol canine alerted to the trailer, Border Patrol officers referred the Defendant to the secondary inspection area, where agents found over 1000 kilograms of marijuana concealed in the trailer beneath a load of cottonseed. (MTS at 1-2; GR at 1.) The Defendant was then placed under arrest and escorted inside the checkpoint station, where Border Patrol Agent Jorge Barron read the Defendant his <u>Miranda</u> rights. (MTS at 2; GR at 1.) The Defendant initialed the Border Patrol form indicating that he understood his rights, and he also checked a box on the form indicating that he was not willing to make a statement or answer any questions. (MTS at 2; GR at 2.) Agent Barron terminated the interview and detained the Defendant at the Border

Patrol Checkpoint.  (MTS at 2; DR at 2.)

The following morning, agents with the United States Drug Enforcement Agency ("DEA") arrived at the Checkpoint to interview the Defendant.  (MTS at 2; GR at 2.)  Special Agent Tara Downs re-advised the Defendant of his Miranda rights.  (MTS at 2; GR at 2.) The Defendant again initialed the form indicating that he understood his rights.  (MTS at 2; GR at 2.)  This time, however, the Defendant indicated to Agent Downs that he *was* willing to answer questions.  (MTS at 2; GR at 2.)  The Defendant subsequently made an allegedly incriminating statement to the DEA agents.  (MTS at 2; GR at 2.)

On October 9, 2006, a grand jury returned a one-count indictment against the Defendant, charging him with knowingly and intentionally possessing marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  (D.E. 6.) On October 23, 2006, the Defendant filed the instant motion to suppress his statements to the DEA agents (D.E. 34), arguing that the statements were obtained in violation of the Defendant's Miranda rights.  On October 30, 2006, the Government filed its response to the Defendant's motion to suppress (D.E. 39), arguing that the statements should not be suppressed because the DEA agents did not violate the Defendant's rights.

On October 30, 2006, the Court held a hearing on the motion to suppress.  At the suppression hearing, the Court heard the

testimony of Agent Barron and Agent Downs.  The Court also heard the testimony of the Defendant, Guadalupe Rodriguez.  The Defendant testified that he invoked his right to counsel during the interview with Agent Downs.[1]  Agent Downs, on the other hand, testified that the Defendant *did not* invoke his right to counsel during the interview, but rather agreed to waive his rights and speak with the DEA agents.  The Court found Agent Downs' testimony to be credible, and the Defendant's testimony not credible on this issue.

## II. Discussion

### A. Waiver of Miranda Rights

In Miranda v. Arizona, the Supreme Court held that before a suspect is subjected to custodial interrogation, law enforcement officers must inform the suspect of his right to silence and right to counsel.  Miranda v. Arizona, 384 U.S. 436, 472 (1966).  The Supreme Court noted, however, that "[t]he defendant may waive effectuation of the rights conveyed in the warnings provided the waiver is made voluntarily, knowingly and intelligently." Moran v. Burbine, 475 U.S. 412, 421 (1986) (citing Miranda, 384 U.S. at 444); see also United States v. Laury, 985 F.2d 1293, 1315 (5th Cir. 1993) ("Defendants may waive their Miranda rights provided that they waive their rights voluntarily, knowingly, and

---

[1] Defendant testified that he did *not* invoke his right to counsel during the interview with Agent Barron on July 13, 2006. Rather, Defendant claimed only to have invoked his right to counsel before Agent Downs the next day.

intelligently"); Colorado v. Spring, 479 U.S. 564, 571 (1987); United States v. Davis, 512 U.S. 452, 458 (1994); Oregon v. Bradshaw, 462 U.S. 1039, 1046-1047 (1983).  The Supreme Court held as follows with respect to determining if a suspect's waiver of Miranda rights meets the knowing and voluntary standard:

> The inquiry has two distinct dimensions.  First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Moran, 475 U.S. at 421 (internal quotes and citations omitted); see also North Carolina v. Butler, 441 U.S. 369, 374-75 (1979) ("the question of waiver must be determined on the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.") (internal citations omitted).[2]

"If the suspect effectively waives his right to counsel after receiving the Miranda warnings [under the knowing and voluntary standard set forth above], law enforcement officers are free to question him."  Davis, 512 U.S. at 458.  However, once a suspect invokes his right to counsel, the Edwards v. Arizona rule applies,

---

[2] Moreover, the Miranda Court held that "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive" his constitutional rights.  Miranda, 384 U.S. at 476.

and all questioning must cease until an attorney is present. Edwards v. Arizona, 451 U.S. 471, 484 (1981). The only way any questioning can resume is if the suspect himself initiates the interaction with the police. See Charles v. Smith, 894 F.2d 718, 725-26 (5th Cir. 1990) (quoting Edwards, 451 U.S. at 485) ("[O]nce a person in custody advises the police during interrogation that he desires counsel, that person may not be questioned further until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.").

When a suspect only invokes his right to silence, but does not request an attorney, law enforcement officers will not violate Miranda as long as the suspect's "right to cut off questioning was scrupulously honored." Smith, 894 F.2d at 726 (quoting Michigan v. Mosley, 423 U.S. 96, 104 (1975)); see also Arizona v. Roberson, 486 U.S. 675 (1988). When a suspect invokes his right to silence, law enforcement must immediately terminate questioning of the suspect. See Mosley, 423 U.S. at 104. However, law enforcement may re-initiate questioning at a later time, so long as they "scrupulously honor" the suspect's invocation of his right to silence.[3] See id.;

---

[3] When the suspect only invokes the right to silence and not the right to counsel, law enforcement may re-initiate questioning at a later time without the suspect himself initiating the contact with law enforcement. See Kelly, 862 F.2d at 1130. In contrast, if the suspect invokes the right to counsel, questioning may not resume without counsel present unless the suspect initiates the contact with law enforcement. See Edwards, 451 U.S. at 485

Kelly v. Lynaugh, 862 F.2d 1126, 1130 (5th Cir. 1988).

### B.     Law Enforcement Did Not Violate Defendant's Rights

#### 1.     Waiver of Right to Counsel

In this case, the Defendant knowingly and voluntarily waived his right to counsel, both to the Border Patrol on the night of his arrest and to the DEA on July 14, 2006.

With regard to the Border Patrol, Agent Barron read the Defendant his Miranda rights on the night of his arrest.  (MTS at 2; MTS, Exh. 1; GR at 1; Testimony of Agent Barron at Suppression Hearing.)  The Defendant was also provided with a Border Patrol form that set forth his Miranda rights.  (MTS, Exh. 1.) The Defendant signed the form and initialed the box that indicated he understood his rights.  (Id.)[4]  However, the Defendant testified at the hearing that he *did not ask Agent Barron for a lawyer*. Accordingly, since the Defendant was informed of his right to counsel yet chose not to ask for representation, the Court finds that the Defendant knowingly and voluntarily waived his right to counsel on the night of his arrest.

With regard to the DEA, prior to questioning the Defendant, Agent Downs read the Defendant his Miranda rights and provided him with a written rights advisement.  (MTS at 2; GR at 2; Testimony of

---

[4]The Border Patrol form clearly states "YOU HAVE THE RIGHT TO TALK TO A LAWYER AND HAVE HIM PRESENT WITH YOU WHILE YOU ARE BEING QUESTIONED ... IF YOU CANNOT AFFORD TO HIRE A LAWYER, ONE WILL BE APPOINTED TO REPRESENT YOU BEFORE ANY QUESTIONING." (MTS, Exh. 1) (emphasis in original.)

Agent Downs at Suppression Hearing.)  The Defendant indicated verbally to Agent Downs that he understood his rights, and the Defendant initialed the rights advisement form again indicating that he understood his rights.  (Id.)  Agent Downs testified that the Defendant *never asked for a lawyer* at any point during questioning.  The Court found Agent Downs' testimony to be credible, and found that the Defendant had not asked Agent Downs for a lawyer.[5]  Accordingly, the Court finds that the Defendant knowingly and voluntarily waived his right to counsel when questioned by the DEA, since the Defendant was informed of his rights and indicated that he understood them, yet he did not ask for an attorney to be present during questioning.

### 2. Waiver of Right to Silence (DEA Questioning)

After Agent Downs read the Defendant his Miranda rights and provided him with the rights advisement form, the Defendant initialed the box on the form that indicated he was willing to answer questions, and the Defendant verbally indicated to Agent Downs that he was willing to answer questions at that time.  (MTS at 2; GR at 2; Testimony of Agent Downs at Suppression Hearing).  As the Defendant was advised of and indicated that he understood his rights, yet he still elected to answer the DEA Agents' questions, the Court finds that the Defendant knowingly and

---

[5] As noted above, the Defendant testified that he had asked Agent Downs for counsel, but the Court found his testimony on the issue not credible.

voluntarily waived his right to remain silent during questioning by the DEA Agents on the day after his arrest.

### 3. Invocation of Right to Silence (to Border Patrol)

The Defendant did invoke his right to silence to the Border Patrol on the night of July 13, 2006, which law enforcement had to "scrupulously honor" per the standard set forth in Michigan v. Mosley, 423 U.S. at 104. The Court finds that the officers did, in fact, scrupulously honor the Defendant's right to silence. After the Defendant invoked his right to silence to the Border Patrol on the night of his arrest, Agent Barron immediately terminated his interview of the Defendant. (MTS at 2; GR at 2.) Law enforcement officers did not question the Defendant again until the next morning, approximately 14 hours later, and the DEA officers read the Defendant fresh Miranda warnings. (MTS at 1-2; GR at 1-2.) Courts have found that a suspect's Miranda rights are not violated under similar facts, where there has been a lapse in time, new officers question the defendant, and the defendant is given fresh Miranda warnings. See, e.g., Grooms v. Keeney, 826 F.2d 883, 885 (9th Cir. 1987) (right to silence was scrupulously honored where the suspect received a fresh set of warnings after a four hour break in questioning); Kelly v. Lynaugh, 862 F.2d 1126, 1130 (5th Cir. 1988) (right to silence was scrupulously honored where fresh Miranda warnings were administered, the "interrogations ceased immediately each time [the suspect] Kelly expressed a desire to

remain silent ... and the efforts to question Kelly were spread over seven to twelve hours"); West v. Jackson, 92 F.3d 1385, 1403 (5th Cir. 1996) (defendant's Miranda rights were not violated where defendant invoked right to silence, law enforcement terminated questioning and waited thirteen hours before re-interviewing defendant).

In sum, the Court finds as follows: (1) that the Defendant knowingly and voluntarily waived his right to counsel (both to the Border Patrol and to the DEA); (2) that the Defendant knowingly and voluntarily waived his right to silence when questioned by the DEA on July 14, 2006; and (3) that both the Border Patrol and the DEA scrupulously honored the Defendant's right to silence that he invoked to the Border Patrol the night of his arrest.

### III. Conclusion

For the reasons stated above, the Court hereby DENIES Defendant Guadalupe Rodriguez' motion to suppress (D.E. 34).

SIGNED and ENTERED this 10th day of November, 2006.

_____
Janis Graham Jack
United States District Judge